UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATHERINE M., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 2:18-cv-01322-RAJ-BAT <br><br> **REPORT AND RECOMMENDATION** |

Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") finding her not disabled. Dkt. 1. Plaintiff contends the ALJ erred in evaluating the medical opinion evidence and that remand is also necessary so that the ALJ may consider the opinion of her treating neurologist, which was submitted to the Appeals Council. The undersigned concludes that the ALJ committed reversible error in his evaluations of the opinions of Plaintiff's treating osteopath and the opinions of the state agency medical consultants. Remand is also necessary so the ALJ may consider, in the first instance, the opinion of Plaintiff's treating neurologist. Therefore, the Court recommends **REVERSING** the Commissioner's final decision and **REMANDING** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

On February 3, 2015, Plaintiff protectively filed an application for disability insurance benefits, alleging disability beginning in June 2013. On September 21, 2017, Administrative Law Judge Larry Kennedy issued a decision finding Plaintiff was not disabled. Tr. 18-23.

**REPORT AND RECOMMENDATION** - 1

Utilizing the five step sequential evaluation process,[1] the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of June 15, 2013. At steps two and three, the ALJ found Plaintiff's depressive disorders; anxiety disorders; PTSD; and fibromyalgia are severe impairments and that these impairments do not meet the requirements of the Listings. Tr. 23. At step four, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) with some exceptions (can only occasionally stoop, kneel, and crouch. She should not climb, balance, or crawl. She must avoid concentrated exposure to vibration and hazards. She is limited to performing simple, routine tasks and following short, simple instructions. She can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period. She requires a work environment with minimal supervisor contact . . . . She can work in proximity to co-workers but not in a cooperative or team effort. She requires a work environment with no more than superficial interactions with co-workers, and that is predictable and with few work setting changes. She should not deal with the general public, as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental contact of a superficial nature with the general public is not precluded.) Tr. 27.

At step five, based on Plaintiff's age (45-49); education (high school); work experience; and RFC, the ALJ determined there were jobs that existed in significant numbers that Plaintiff can perform, including work as a production line solderer (DOT 813.684-022); an electrical accessories assembler (DOT 729.687-101); or an agricultural sorter (DOT 529.687-186) (Tr. 42-43) and therefore, Plaintiff was not disabled. Tr. 43.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

**REPORT AND RECOMMENDATION** - 2

**DISCUSSION**

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id*. (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id*. The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id*.

**I.     Medical Opinion Evidence**

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). As part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are

**REPORT AND RECOMMENDATION** - 3

relevant" in deciding how to weigh medical opinions. *Id*. at 603. The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted).

To reject the uncontradicted opinion of either a treating or examining physician, an ALJ must provide clear and convincing reasons. *Revels*, 874 F.3d at 654. When other evidence contradicts the treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons" to reject that opinion. *Id*. A non-examining physician's opinion may constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinion of a non-examining physician does not, standing alone, constitute substantial evidence concerning the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831.

**A.    Cathy Lindsay, D.O.**

Plaintiff began seeing Dr. Lindsay in July 2014, about a year after her June 2013 alleged onset date. Tr. 751-52. Dr. Lindsay saw Plaintiff regularly for osteopathic treatment in 2014 and 2015. Tr. 751-63, 553-56. In March 2015, Dr. Lindsay described Plaintiff's limitations, noting her diagnosis of fibromyalgia and the presence of left upper extremity and lower extremity radiculopathy. Tr. 1134. Dr. Lindsay noted that Plaintiff had significant problems walking. She could not travel without assistance; she could not walk one block at a reasonable pace on rough or uneven surfaces, in fact she walked very slowly on flat surfaces; she could not carry out

routine ambulatory activities such as shopping and banking. Tr. 1135. Dr. Lindsay wrote: "Standing is painful – she has to move after 10 minutes. She needs to rest after standing and walking for ~30 minutes." *Id.* She opined that any repetitive activity aggravated Plaintiff's condition; Plaintiff would only be able to sort and handle papers or files for a limited amount of time; Plaintiff was unable to stand and/or walk six to eight hours daily. *Id.* Dr. Lindsay thought Plaintiff was capable of lifting less than 10 pounds on an occasional basis (Tr. 1137) could only occasionally push or pull with her upper extremities or use hand controls (Tr. 1138), and was easily overwhelmed by too much stimulus. Tr. 1139. In November 2015, Dr. Lindsay wrote an additional letter noting that Plaintiff's condition was easily aggravated. Tr. 635. She noted Plaintiff was limited in all of her activities and would not be able to do any kind of work on a regular basis. Tr. 635.

  The ALJ rejected Dr. Lindsay's opinion and the findings of Plaintiff other treating sources for the following reasons:

> The opinions do not contain completed evaluations with objective findings consistent with such severe limitations. In addition, the rather profound limitations are largely inconsistent with the objective medical evidence. For example, as discussed above, some notes indicated reduced range of motion in the cervical spine, tenderness in various areas; and, less frequently, a stiff gait. During some examinations, the claimant lied down, remained standing, or changed positions due to her reports of pain. Overall, however, most examinations do not show such a presentation. Rather, the claimant typically presented as alert and in no acute distress, with little or no abnormality in gait or balance; no muscle wasting or weakness; no swelling; and no abnormalities in sensation, reflexes or other neurological function. Imaging of the hips and cervical spine revealed minimal abnormalities. Also inconsistent with opinions of the treating providers, examination findings were generally unremarkable even with the claimant reported an extreme level of symptoms.
>
> The inconsistency between the provider's opinions and the claimant's presentation suggests that the providers relied heavily on the claimant's subjective report of her diagnosis and symptoms; for the reasons discussed at length in finding #5, the claimant's report is not consistent with the evidence as a whole. The longitudinal record consists primarily of the claimant's repeated recitation of

> a diagnosis and the claimant's providers['] reliance on the claimant's assertion of a diagnosis. Repeated recitation of a diagnosis does not constitute a medically determinable impairment. Rather a medically determinable impairment must result from anatomical, physiological, or psychological techniques. Indeed, many of the providers predicated limitations on reported diagnoses that were never established by objective findings or that were ruled out by objective findings such as Lyme Disease, Epstein Bar syndrome, Ehlers Danlos Syndrome (EDS), and degenerative disc disease, and Hashimoto's thyroiditis (14F; 36F/1; 62F/4; see 15F, where treating provider Dr. Lindsay indicates that no clear diagnoses explains the symptoms or justifies disability.
>
> Furthermore, it does not appear that the providers took full account of the evidence of symptom exaggeration reflected in Dr. Shaw's test findings.

Tr. 36-37.

Defendant argues the ALJ properly rejected Dr. Lindsay's opinion because (1) she failed to substantiate her opinion with objective findings; (2) she relied on Plaintiff's report of her symptoms; (3) her opinion was inconsistent with objective findings; and (4) she did not consider the findings of Jeffrey Shaw, Ph.D. Dkt. 13, pp. 3-6.

Although the ALJ gave several general reasons for rejecting Dr. Lindsay's opinion, he did not specifically describe her opinion or her treatment notes or explain with any specificity why her opinion was unsupported, such that the Court may conclude that the ALJ gave specific and legitimate reasons for rejecting it. Tr. 36-37. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996). Defendant offers an explanation of the ALJ's reasoning, but the Court may not affirm based on reasoning not employed by the ALJ. The Court must evaluate the Commissioner's decision "only on the grounds articulated by the agency." *Ceguerra v. Secretary*, 933 F.2d 735, 738 (9th Cir. 1991);

**REPORT AND RECOMMENDATION** - 6

accord *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Bray v. SSA*, 554 F.3d 1219 (9th Cir. 2009). Moreover, the ALJ failed to address the objective findings of pain that are contained in Dr. Lindsay's treatment notes. Dr. Lindsay examined Plaintiff and noted abnormalities. Tr. 751-63, 553-56; cf. 752 (decreased shoulder range of motion; bilateral upper thoracic fullness; bilateral sacroiliac restriction); 753 (bilateral rib congestion; left lower and upper extremity congestion); 753 (bilateral SI restriction, thoracic fullness); 754 (SI restriction); 755 (patient still very limited). Thus, the ALJ erred when he found her opinion was not supported by objective findings.

The ALJ found that generally, the limitations described by Dr. Lindsay were inconsistent with the objective medical evidence, but the ALJ did not fairly describe the findings in the record. For example, the ALJ cited seven examinations which noted Plaintiff lied down, remained standing, or changed positions due to her reports of pain. However, the record reflects far more observations of Plaintiff's difficulty sitting or standing for any length of time than were acknowledged by the ALJ. See Dkt. 11, pp. 7-9 (citing numerous observations from Plaintiff's providers regarding limitations in her ability to sit and stand, and difficulty in changing position).

Defendant argues the ALJ's rejection of Dr. Lindsay's opinion was also proper because Dr. Lindsay relied on Plaintiff's reports. Dkt. 13, pp. 3-4. When a physician has relied on the subjective complaints of a properly discredited plaintiff, this can, in some circumstances, be a legitimate basis for disregarding that physician's opinions. *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1988). Here, however, there is no evidence that Dr. Lindsay relied more heavily on Plaintiff's reports than on her own expertise. Dr. Lindsay's opinion includes Plaintiff's diagnoses, refers to MRI findings, and shows she reviewed earlier records, including the evaluations of rheumatologist Patrick Wood, M.D. Tr. 1134. Thus, it was error for the ALJ to

**REPORT AND RECOMMENDATION** - 7

1  reject Dr. Lindsay's opinion on this basis. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir.
2  2014) (the ALJ did not properly reject physician's opinions based on their reliance on Plaintiff's
3  statements where the opinions documented observations, diagnoses, and prescriptions, in
4  addition to the plaintiff's self-reports).

5  Defendant argues the ALJ properly rejected Dr. Lindsay's opinion because it was
6  inconsistent with normal findings on examinations including a few examinations that showed
7  Plaintiff's gait was normal. Dkt. 13, pp. 4-5. Although Defendant acknowledges that the ALJ
8  failed to mention "a number of examinations" which showed abnormal findings, Defendant
9  argues that a remand on this basis would result in the Court engaging in an improper reweighing
10 of the evidence. Dkt. 13, p. 5. The Court disagrees, as the question here is whether the ALJ
11 properly weighed other evidence of abnormal findings, including a "number of examinations"
12 and Plaintiff's brain MRI (showing abnormally low cortical gray matter), which also appears to
13 have provided evidence of pain. Tr. 734.

14 The ALJ also erred when he rejected Dr. Lindsay's opinion when he found some of the
15 opinions of record were based on unsubstantiated diagnoses such as Lyme Disease, Epstein Barr
16 Syndrome, Ehlers-Danlos Syndrome, or Thyroiditis. Tr. 37. This was not a specific and
17 legitimate reason for rejecting Dr. Lindsay's opinion when both the ALJ and Dr. Lindsay found
18 Plaintiff was limited due to fibromyalgia. Tr. 1134.

19 Defendant appears to agree the ALJ did not properly reject Dr. Lindsay's opinion based
20 on a lack of muscle wasting and atrophy, but argues the ALJ was ultimately correct because of
21 findings showing that Plaintiff has normal gait, balance, sensation, and reflexes. Defendant
22 argues these normal findings refute Dr. Lindsay's opinions concerning difficulty with repetitive
23 or prolonged activity. Dkt. 13, p. 6. However, Dr. Lindsay premised these opinions on fatigue

and easy aggravation of symptoms, not on difficulties with sensation or reflexes. Tr. 1138, 1135. And, as noted by Plaintiff, an individual with fibromyalgia may have significant limitations even in the presence of normal gait, balance, sensation and reflexes. Dkt. 12, pp. 10-11. The ALJ rejected Dr. Lindsay's opinions because Plaintiff did not have swelling, abnormalities in sensation, reflexes or other neurological function, and because x-rays showed minimal abnormalities. However, the primary physical impairment in this case is fibromyalgia, which does not rely on x-ray or MRI findings. *See Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017). Likewise, "a person with fibromyalgia may have muscle strength, sensory functions, and reflexes that are normal." *Id*. at 664. In addition, these findings fail to show that Plaintiff is less limited than found by Dr. Lindsey.

Finally, Defendant argues the ALJ properly rejected Dr. Lindsay's opinions based on the "symptom exaggeration reflected in" the test findings of Jeffrey Shaw, M.D. Dkt. 13, p. 7, citing Tr. 37. A fair reading of Dr. Shaw's report is that he found Plaintiff's performance levels were "an underestimate of what her capabilities would be if she were not distracted and affected by the pain, malaise, fatigue, sleep deprivation and multiple physiologic concerns she has. Additionally, there is a possibility that … depression and anxiety could have impacted her performance on the testing to a degree. Tr. 794. Dr. Shaw also noted the potential significance of Plaintiff's brain MRI:

> It is clear that Ms. Munson's focus is very unreliable at least in part due to the distraction from the pain, malaise, fatigue, fogginess, and sleep deprivation. I cannot diagnosis or rule out a potential neurological condition. *However, it is notable that her brain MRI showed lower than the first percentile for gray matter volumes and lower than normal total brain volume.* It is not yet apparent why brain imaging shows such significant abnormalities and I have seen no neurological explanation thus far. However, with such thinning/atrophy of the brain, one would be expected to have significant cognitive impairment and limitations.

Tr. 796 (emphasis in original). Dr. Shaw's conclusion does not differ significantly from Dr. Lindsay's conclusion that Plaintiff performed poorly on tests due to fatigue, pain, and lack of stamina. Thus, it was error for the ALJ to conclude "symptom exaggeration."

In sum, the ALJ failed to give specific and legitimate reasons for rejections the opinions of Dr. Lindsay.

### B. State Agency Medical Consultants

A state agency medical consultant's opinion is significant and must be addressed. 20 C.F.R. § 404.1527(e). Medical consultants are not only highly qualified, but are also experts in Social Security disability evaluation. 20 C.F.R. § 20 C.F.R. 404.1513a(b)(1). The ALJ "must" consider the medical consultant's findings. *Id*. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p; *see also Sawyer v. Astrue*, 303 Fed. Appx. 453 (9th Cir. 2008) (the ALJ erred when he indicated he agreed with the findings of the state agency medical consultants but did not accurately include the limitations found by the consultants in his decision and did not otherwise explain the weight he gave those opinions).

#### 1. Alnoor Virgi, M.D.

In October 2015, state agency medical consultant Alnoor Virji, M.D. reviewed the medical records and determined that Plaintiff could perform work that only required standing/walking up to two hours in an eight-hour workday. Tr. 123. In contrast, the ALJ concluded Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b), which provides that a job is in the light category when it requires a good deal of standing and walking. The ALJ explicitly disagreed with Dr. Virji's conclusion that Plaintiff was capable of standing and walking only up to two hours per day, stating "I have reviewed the entire record, and, for the

**REPORT AND RECOMMENDATION** - 10

reasons discussed above at finding #5 (including the claimant's typically unremarkable gait), I conclude that the evidence suggests less restriction in standing and walking than indicated by Dr. Virji." Tr. 36.

Defendant argues the ALJ properly rejected this opinion based on objective findings showing Plaintiff had an unremarkable gait. Dkt. 13, at 7-8. However, the ability to walk with a normal gait, *i.e.* not wide-based or antalgic, does not explain why Plaintiff is not capable of standing or walking for a full work day, particularly when the ability to stand or walk would be impacted by pain or fatigue (which one might reasonably conclude would only increase during an eight-hour day). Accordingly, the ALJ did not give legally sufficient reasons for rejecting this portion of Dr. Virji's opinion.

**2.    Dan Donohue, PhD and Steven Haney, M.D.**

State agency psychological consultants, Dr. Donohue and Dr. Haney, found Plaintiff would be moderately limited in her ability to maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptom and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 107. When asked to explain in narrative form the sustained concentration and persistence capacities and/or limitations, Dr. Donohue wrote: "Client is capable of sustained concentration, pace and persistence for normal workweek/day. Clmt may experience moderate disruptions on occasion due to psychological symptoms." Tr. 107. Dr. Haney adopted this opinion on reconsideration. Tr. 125-27.

Defendant argues that Drs. Donohue and Haney included vague qualifiers in their opinions, *i.e.*, that Plaintiff "may" have difficulty with some tasks "on occasion" and therefore,

**REPORT AND RECOMMENDATION** - 11

the ALJ's interpretation of their opinion does not constitute a rejection so long as it is a rationale interpretation. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1107-08 (9th Cir. 2017). Here, the ALJ limited Plaintiff to simple, routine tasks; following short, simple instructions; work that needs little to no judgment; and performing simple duties that can be learned on the job in a short period. Defendant contends that by doing so, the ALJ did not reject the doctors' opinions, but properly accounted for them in the RFC assessment.

However, the ALJ failed to mention or discuss "moderate disruptions on occasion due to [Plaintiff's] psychological social symptoms" in determining the RFC. Limiting Plaintiff to simple, routine tasks does not take into account moderate disruptions or the impact such disruptions would have on Plaintiff's ability to perform the simple, routine tasks within a normal workday or work week.

In conclusion, because the ALJ omitted from the RFC the limitations that he erroneously rejected in the opinions of Dr. Lindsay, Dr. Virji, Dr. Donohue, and Dr. Haney, these errors were not harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error deemed harmless only if "inconsequential" to "ultimate nondisability determination"). Thus, it is recommended the Court remand this case for a reexamination of Plaintiff's physical and psychologically based symptoms.

**II.     Evidence Before the Appeals Council**

Plaintiff asks the Court to remand this case so that the finder of fact can consider a December 12, 2017 declaration from her treating neurologist Erik Armitano, M.D., which was submitted by Plaintiff for the first time to the Appeals Council. The Appeals Council rejected the evidence on the basis that "this evidence does not show a reasonable probability that it would change the outcome of the decision." Tr. 2.

"The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." *Brewes v. Colvin*, 682 F.2d 1157, 1162 (9th Cir. 2012)(citing 20 C.F.R. § 404.970(b)). When the Appeals Council considers the evidence in denying review of the ALJ's decision, "the new evidence is part of the administrative record, which the district court must consider in determining whether [or not] the Commissioner's decision is supported by substantial evidence." *Id*. at 1159-60 (emphasis added).

Here, the Appeals Council evaluated the new medical evidence and determined that the evidence did not provide a basis for changing the ALJ's decision. Under these circumstances, this Court has the authority to consider the evidence submitted to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d

Dr. Armitano diagnosed orthostatic intolerance, chronic vestibulopathy, and Ehlers-Danlos syndrome with joint hypermobility.[2] Tr. 9. He reported Plaintiff had significant vertigo and dizziness with a positive nystagmus testing on the left as well as a positive Romberg testing with swaying bilaterally. Tr. 9. He opined Plaintiff's constellation of orthostatic intolerance and vestibulopathy caused chronic disequilibrium forcing her to lie down at periodic unscheduled times throughout the day. Tr. 9.

---

[2] Ehlers-Danlos syndrome is a group of inherited disorders that affect an individual's connective tissues. People who have this disorder have overly flexible joints which can cause joint pain and dislocations. See Mayo Clinic Staff, Ehlers-Danlos Syndrome, available at https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-causes/syc-20362125, visited March 18, 2019. Diagnosis is based on extremely loose joints, fragile or stretchy skin, and sometimes genetic tests. Id.

**REPORT AND RECOMMENDATION** - 13

This new evidence could change the ALJ's decision because it established a diagnosis of Ehlers-Danlos syndrome, provided objective support for Plaintiff's reports of dizziness, and described objectively supported limitations in an opinion which the ALJ did not consider. The ALJ found Plaintiff did not have Ehler's Danlos syndrome because it was only mentioned as a rule out finding and he found Plaintiff's reports of dizziness were not supported. Tr. 24. Dr. Armitano's opinion submitted to the Appeals Council establishes a definitive diagnosis of Ehlers Danlos and an impairment (orthostatic intolerance and chronic vestibulopathy) which could be expected to cause Plaintiff's complaints of dizziness. Dr. Armitano's opinion also shows that due to these impairments, Plaintiff would need to lie down at unscheduled times during the day; would have difficulty persisting at tasks during the day even if sitting; and would be incapable of tasks for 20% of the workday. Tr. 9-10. These findings, if credited, would result in a finding of disability as the vocational expert testified that it would not be tolerated if an individual were off task 20% of the time. Tr. 86.

Because this evaluation shows Plaintiff had a greater degree of limitation than found by the ALJ prior to the date of his decision, remand is necessary so that a finder of fact may consider this evidence.

## CONCLUSION

Based on the foregoing, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate the medical opinions of Dr. Lindsay and the state agency medical consultants, and evaluate Dr. Armitano's opinion. Thereafter, the ALJ should make new findings at step two of the sequential evaluation process; make a new residual functional capacity assessment and new findings at step five of the

**REPORT AND RECOMMENDATION** - 14

sequential evaluation process.

Any objection to this Report and Recommendation or the attached proposed order must be filed and served no later than **May 28, 2019**. If no objections are filed, the Clerk shall note the matter for **May 30, 2019** as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed **eight** pages. The failure to timely object may affect the right to appeal.

DATED this 7th day of May, 2019.

BRIAN A. TSUCHIDA  
Chief United States Magistrate Judge

**REPORT AND RECOMMENDATION** - 15